MOWRY (WHITNEY v.). See Cases Nos. 17,592–17,594.

## Case No. 9,894.

### The MOXEY.

### [1 Abb. Adm. 73.] [1]

District Court, S. D. New York. Dec., 1847.

COLLISION — INJURY BY RUBBING AGAINST — BY WHOM CAUSED—MUTUAL CONTRIBUTION.

1. An injury received by a vessel at her moorings, in consequence of being violently rubbed or pressed against by a second vessel lying alongside of her, in consequence of a collision against such second vessel by a third one under way, may be compensated for under the general head of collision, as well as an injury which is the direct result of a blow properly so called.

[Cited in The Nora Costello, 46 Fed. 871.]

2. But to entitle the injured vessel to recover against her stationary neighbor, under such circumstances, instead of against her who was the original cause of the accident, such stationary vessel must be proved to have been in fault.

3. The rule of mutual contribution is not applied to cases of accidental collision from physical causes for which neither vessel is to blame; but each vessel in such case must bear her own loss.

This was a libel in rem, by Abner and John H. Davis, owners of the barge New London, against the brig Moxey and the schooner Avenger, to recover damages for a collision between those vessels and the New London. The libel stated, that on November 19, 1846, the barge New London, owned by libellants, was lying in one of the slips in the port of New York, engaged in delivering her cargo, and that she was well secured to the wharf, well manned, &c. That on the same day, the schooner Avenger lay at the end of the pier to which the New London was secured; and the brig Moxey lay within the slip, alongside of the New London, and quartering on her bow, and was fastened to the pier by one line from the bow, another line from the stern, which latter line passed across the New London, and by a third line fastened to the New London. That during the night a storm arose, and the Avenger, being carelessly and negligently fastened to the pier, broke loose from her moorings and floated around into the slip and alongside of the Moxey. That the Moxey, being negligently and carelessly fastened to the wharf, and, in particular, not having a line carried to the pier on the opposite side of the slip, as in such weather she ought to have had, was, by the collision of the Avenger, driven against the New London, whereby, and by being thrown up and down between the brig and the wharf, by the sur-

ging of the water, she received much damage. The answer denied all the charges of carelessness or negligence; and averred that the Moxey was well manned and well and properly secured; and that she had taken the position occupied by her at the request of those in charge of the New London, to accommodate them in delivering her cargo; and that every means was taken at the time of the collision by those in charge of her, to avoid injuring the New London. The answer also charged, that the New London was old and decayed, and that any injury which she suffered was ascribable, not to any neglect or want of care or skill on the part of the master and crew of the Moxey, but to her own decayed and unsound condition. The libel was originally filed against both the Moxey and the Avenger; but upon exceptions taken to the libel, it was held by the court, that inasmuch as it was not charged in the libel that the collision complained of was the joint act of the two vessels, or that it was made by them at the same time, or that they were under charge of the same crew or persons, or that the injury inflicted was upon the same part of the vessel of libellants, the libellants were not entitled to proceed against the two vessels conjointly in one action, but must elect to sue either the Moxey or the Avenger. In pursuance of this decision, the suit was discontinued as against the Avenger, and the libellants proceeded against the Moxey alone. The cause now came before the court upon the proofs taken against her. So far as the decision of the case turned upon matters of fact, the opinion of the court shows how far the respective allegations of the parties were regarded as sustained by the proofs.

S. P. Nash, for libellants.

I. By the general principles of maritime law, the vessel having the greatest facilities of movement is regarded as guilty of negligence if she does not employ those facilities for the protection of other vessels. Story, Bailm. §§ 611, 611b; Abb. Shipp. 234. Here the Moxey lay outside and was moved by sails. The barge was a tow-vessel, having no self-moving power; and she moreover lay inside, where she could not be moved out of danger. She was also the weakest vessel. Under such circumstances, the burden of proof is thrown upon the Moxey, to free herself from the presumption of negligence; and it does not devolve upon the New London to prove her guilty of it.

II. The fact that the New London was unsound could have no bearing on her right to an indemnity; it could only affect the amount of damages. A vessel has a right to be protected in her lawful position, whether she is sound or unsound.

Edwin Burr, for claimants.

I. This is not a case of collision. That term always implies a movement of one vessel through the water, and a striking against

another, causing injury to her. 2 Condy's Marsh. Ins. 431. The barge, in this case, was moved up and down by the surging of the water, and was thus injured. The damage in no way resulted from any fault or negligence in navigating the Moxey.

II. Primâ facie, the injury is from the act of God, and the libellant must show a strong case of fault in the claimants, to rid himself of this conclusion and render the brig liable.

III. In ordinary cases of collision, the libellant must be held to strict proof that the injury was caused by a breach of some nautical rule or usage on the part of the crew of the brig, or some want of ordinary nautical skill, without such breach or neglect on the part of the libellants. Story, Bailm. § 611. In all cases of collision, the libellant must prove that the injuries complained of resulted from the fault of the defendant, there being no want of ordinary care on his own part. Abb. Shipp. 238.

IV. It is the Avenger which is chargeable with responsibility for the collision.

BETTS, District Judge. This clearly is not a case of collision within the nautical acceptation of that term, which imports the impinging of vessels together, whilst in the act of being navigated. Common usage, however, applies the term equally to cases where a vessel is run foul of when entirely stationary, or is brought in contact with another by swinging at her anchor. Jac. Sea Laws, 326, note; 1 Condy's Marsh. Ins. c. 12, § 2; Abb. Shipp. 238.

A loss under the circumstances of the present case is, moreover, a loss from the peril of the sea, (1 Phil. Ins. 249,) and it falls also within the class of losses adjusted, under many maritime codes, by mutual contribution of the vessels injuring and receiving injury. Thus Weskett says: "When two or more ships are lying at anchor, and another, in what manner soever it may happen, is in danger of coming too near, the master who lies foremost shall, if he can, make way, and be obliged, at the other's call, to weight anchor and remove; in failure whereof, he shall be answerable for whatever damages may ensue, especially if happening in a harbor where the water may ebb away and the ship be aground;—in case he who in this manner endeavors at the other's call to make way, shall receive any damage in ship or goods, he shall be indemnified by the other according to arbitration; but if in making way he shall happen to do any damage to the other ship or goods, he shall not be answerable for it." Wesk. Ins. tit. "Running Foul."

I do not think that the term "collision," as used in the maritime law, is to be construed with the absolute strictness contended for by the claimant's counsel. An injury received by a vessel from being violently rubbed by another, or pressed by her with force against a pier or wharf, as in this case, may, I am inclined to think, be recovered for in admiralty under the general charge of collision, as well as where the injury is derived directly from the headway of a vessel under navigation, or drifted against her.

But conceding that this description of injury, whether technically a case of collision or not, is still one for which the libellants could sustain an action in rem, I do not think the particulars essential to the support of such action have been established by the proofs.

The brig was placed alongside the barge at the request of those who had her in charge, and in such a way as to accommodate them in unlading cargo from their own barge into her. She was adequately secured in the mode usual in this harbor, and was manned and managed in her berth conformably to the usage of the port. The injury inflicted occurred during a violent gale of wind arising suddenly in the night. Whether that injury was occasioned by the swell of the waves rubbing the two vessels together as they were lifted up and down, or whether the causa causans was the drifting of another vessel, which had broken loose in the gale, against the brig, neither circumstance affords ground for imposing the loss upon the brig. No fault is proved against her in taking the place she occupied, or in any thing done on board of her conducing to the injury of the barge.

It is asserted that there was blameable negligence on the part of the brig, in not placing fenders between herself and the barge, and also in omitting to carry a line across the slip to the opposite pier, so as to ease off the pressure against the barge.

As to the first particular, it is to be remarked, that the duty of using fenders between the two vessels was mutual and reciprocal, the brig being by law equally entitled with the barge to the berth she occupied, and not bound to do more than the other vessel for their common protection. But there is proof that the brig had a competent supply of fenders, and used them on each side of her till they were broken up by the jamming of the two vessels in the severity of the storm. Indeed, the evidence renders it quite probable, that the efforts to protect the barge in this way led to her injury, as it would seem she was principally damaged at the points where fenders had been placed against her.

In regard to the second point, wherein it is asserted that the brig was culpably negligent in omitting to carry a line to the opposite pier, the city ordinances prohibit running lines in this manner across the opening of slips (Ordinance N. Y. City, 1839); but if it had been lawful to use one in the emergency of the case, it was as much the duty of the libellants as of the claimants to take that precaution. This was not a common culpable act, conducing to the collision, but a mutual omission to do an act on shore which might have prevented or lessened the injury,

and neither party can make the other responsible to him for such an omission.

Two circumstances are to be regarded:—

1. The brig was entitled by the law of the port, to the berth she occupied; she had entered it without injuring the barge, and was secured there by the usual and competent fastenings. When, therefore, the peril of this storm came upon them, the barge had no right to require the brig to leave the slip, or to change her position, unless it be clearly shown that the change could have been made at the time and under the circumstances, without hazard to her.

2. The Avenger, another vessel, was driven from her fastening and into this slip against the brig by the gale; and as the wind crowded her directly upon the brig, and thereby increased the pressure of that vessel against the barge, the damage incurred by the latter would be attributable to the Avenger, her action being the direct cause of the injury. In legal contemplation, she was in fault in taking a berth in an insecure place, or in not using fastenings sufficient to hold her there, and adequate to protect her from being driven off by the storm.

The brig has no connection with that fault; and in so far as she participated in the injury inflicted upon the barge, the collision was by vis major, without negligence or blame on her side, and the loss must be borne where it falls. 3 Kent, Comm. 231.

Although the rule of mutual contribution may be adopted by our courts in cases of loss by collision at sea or in port, occurring by accident or through the mutual fault of both vessels, there would be no reason for applying it where there was no common fault, and where the management of the two vessels in taking their positions in relation to each other was by mutual agreement. On the contrary, where damage is incurred without fault on the part of either vessel, and by some irresistible force constituting a case of vis major or inevitable accident, the loss must be borne by the party upon whom it happens to fall, the other not being responsible to him in any degree. By the maritime law of both England and the United States, where a collision happens by inevitable accident and without fault of either vessel, each must bear the damage received by her, whatever it may be, and has no claim upon the other for contribution.[2] The Woodrop Sims, 2 Dod. 85; The Catherine of Dover, 2 Hagg. Adm. 154; The Shannon and The Placidia, 7 Jur. 380; The Ebenezer, Id. 1118, 2 W. Rob. Adm. 206; Reeves v. The Constitution [Case No. 11,659]; The Eliza and Abby [Id. 4,349];

[2] This rule has since been laid down by the supreme court of the United States, in Stainback v. Rae, 14 How. [55 U. S.] 532. The same principle appears to be recognized in Scotland. Innes v. Glass, 4 Murray. 167. By the law of other maritime states, however, the aggregate damage to both vessels incurred through a collision for which neither was to blame, is apportioned equally between them.

Abb. Shipp. 238; Story, Bailm. § 608, and note 2; 3 Kent, Comm. 231.

In my opinion the action cannot be sustained, and the libel must be dismissed with costs to be taxed.