## THE NORA COSTELLO.[1]

### MORRISSEY *v.* THE NORA COSTELLO.

*(District Court, S. D. New York. May 30, 1891.)*

ADMIRALTY—MAKING FAST TO WHARF—INSUFFICIENT FASTENING—BREAKING ADRIFT. Libelant's boat was lying off the end of pier 2, near Wallabout canal, in the East river. Twenty-five feet away, and at pier 1, lay a tier of 6 boats, among them the Nora Costello. One hundred feet above these lay another tier of 8 or 10 boats. On the turn of the tide, the wind blowing fresh at the time, the whole last-named tier broke loose, and was carried down upon the second tier of boats, which in turn gave way, and swung around upon the boats off pier 2, the Costello striking libelant's boat, and doing damage, to recover for which this libel was filed. The libel charged that the Costello was not properly made fast to the pier. The evidence showed that she was fastened in the customary manner. *Held*, that vessels, in making fast to piers, are bound to provide only against ordinary contingencies, such as they can anticipate; that they are not bound to make fast by lines so strong or numerous as to resist the impact of such a fleet of vessels as got adrift in this case; and that, as there was no negligence in the Costello as to her mode of fastening, the libel against her should be dismissed.

In Admiralty. Suit to recover damages caused by collision.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

*Alexander & Ash*, for libelant.
*Hyland & Zabriskie*, for respondent.

BROWN, J. On the morning of July 9, 1890, the libelant's canal-boat John Kelly was lying off the end of pier 2, bow down, to the southward of Wallabout canal, outside of a lighter, which was fastened at the end of the dock. The canal-boat had one line run to the dock, and two lines were made fast to her and the lighter. A space of about 25 feet separated these boats from another tier of six boats that lay in a similar manner off the end of pier 1; among them the Nora Costello, which had arrived there that morning with a cargo of ice, and was directed to take her position as the fourth boat off from the pier. Afterwards another boat came, and made fast outside of her. About 100 feet above the boats off pier 1, was another tier of 8 or 10 boats, all along-side and off the bulk-head immediately north of the canal, fastened to one another; and the inside boat, at least, had her northerly end made fast to a ring bolt in the string piece of the bulk-head. When the tide became flood, running south at that point, and the wind fresh from the northwest, the whole last-named tier gave way at the northerly end and swung off from the wharf, and were carried down upon the tier of boats off pier 1. The impact broke the northerly line that held the latter boats to pier 1, so that they swung around and came down upon the boats off pier 2; the Costello striking against the stern of the Kelly, and breaking her taffrail, and doing other damage, to recover for which the above libel is filed.

The faults charged upon the Costello are that she was not sufficiently made fast to pier 2, nor properly manned. There is no evidence to sustain the latter charge, and the controversy has turned mainly upon the obligations that attach to boats moored outside of others in the manner above stated. There is some evidence indicating that the pressure of boats for room there is so great that not infrequently in the crowding together some get loose, or break away; one tug finding its business in keeping them in place. The result of the evidence given on both sides as to the usual practice of boatmen in fastening their boats, and as to what is usually deemed safe and prudent, is that boats fastened outside of others should run at least one line to the shore, if that can be readily done; but it is not considered necessary, nor is there any uniform custom to do so, where the boat next to the dock is securely fastened by an abundance of strong lines, and where the cargo of intervening boats makes it difficult or improper to run lines across. I do not think it is any part of the legal obligation of boats mooring along-side of the wharf to make fast by lines so strong or so numerous, or by such attachments, as to resist the impact of such a fleet of vessels as got adrift in this case and came down upon them. The weight and force of such impacts are wholly beyond the calculation of ordinary boatmen. It is enough, in my judgment, that each boat secures itself properly against all the ordinary forces of wind, tide, or other causes to be looked for in the position taken for mooring. The tier in which the Costello lay received the force

of 8 or 10 boats that had broken loose from the bulk-head above by the giving way of the string piece. No such accident had occurred before, or was likely to be anticipated. It was a vast weight that came down with the wind and tide, and such as must inevitably carry away the boats below that were only secured by fastenings sufficient for ordinary navigation. The Costello's tier was in like manner carried down from her own pier to the tier below, in which the libelant's boat lay; and, although she was secured by a line to the dock, it was parted by the impact. And that tier also would probably have gone below had it not been bound in against the wharf by the wider tier from above. The claimant's witnesses testify that they could not carry a line to pier 1, because the boat next inside of her had a deck-load, which prevented; nor could they lawfully have carried a line across the canal to the bulk-head above, the only leading line that could have done any good. The harbor master testified that the claimant's boat was moored in the customary way, and that the two boats nearest the pier were both made fast to it. The claimant's captain also testifies that, before making fast to the third boat, he examined the lines of the inside boat, and found that they were new, strong, and secure.

Upon these facts I cannot find that there was any negligence in the claimant's boat in her mode of fastening. It was evidently, it seems to me, sufficient for all ordinary contingencies, such as she was bound to anticipate; nor is there any reason to suppose that, if an additional line had been run to the pier, it would have made any difference when the tier of 8 or 10 boats from above came down upon the tier off pier 1. Such a line would have been snapped at once, as was that of the libelant's boat. In substance, the present case, it seems to me, does not differ from those that have arisen from time to time, in which one boat is injured by another that is driven upon her, without the fault of either, by the impact of a third boat upon the second, through the fault of the third. In such cases the latter boat alone is held responsible. *The Moxey,* 1 Abb. Adm. 73; *The Grapeshot,* 38 Fed. Rep. 156; *The W. J. McCaldin,* 35 Fed. Rep. 330; *The Northam,* 37 Fed. Rep. 238. In the present case it does not appear what or whose was the original fault in consequence of which the tier of 8 or 10 boats off the bulk-head got adrift. That, it seems to me, is the true and necessary inquiry in fixing the responsibility for the libelant's damages. No fault or negligence being proved in the claimant's vessel, she must be acquitted.

Libel dismissed, with costs.