TICE TOWING LINE, Appellant, *v.* WESTERN ASSURANCE COMPANY, Respondent.

First Department, March 19, 1926.

**Insurance — marine insurance — indemnity policy covering liability arising out of collision in tow — bumping or pounding of one vessel in tow against another in tow is collision under policy — evidence shows that leak in one vessel was caused by pounding of another in same tow.**

In an action on a marine insurance policy indemnifying the owners of tugs against loss caused by collision of vessels in tow, it was error to direct the jury to render a verdict in favor of the insurance company, since it appears that the injured

vessel was in tow, tied to another vessel alongside, and that the vessel injured was pounded or bumped by the accompanying vessel to such an extent as to cause a leak.

Collision within the meaning of the policy is construed to mean, in view of the inactive character of the vessels, neither having motive power, a bumping or pounding together of two vessels.

The evidence shows that the leak and the resultant sinking of the damaged vessel was caused by the bumping or pounding of the vessels in the same tow.

APPEAL by the plaintiff, Tice Towing Line, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 20th day of May, 1925, upon the verdict of a jury rendered by direction of the court pursuant to a stipulation that the case be tried before the court without a jury and that the verdict be directed with the same force and effect as though a jury were present, and also from an order entered in said clerk's office on the same day, denying the plaintiff's motion for a new trial made upon the minutes.

*William F. Purdy* [*George V. A. McCloskey* of counsel], for the appellant.

*Burlingham, Veeder, Masten & Fearey* [*Harrington Putnam* of counsel], for the respondent.

McAVOY, J.    Judgment was rendered in this cause in favor of the defendant dismissing the plaintiff's complaint after a trial before the court without a jury.

The causes of action litigated were based upon two policies of insurance under which defendant insured the plaintiff against loss or damage which might arise out of plaintiff's legal liability as the operator of the steam towing tugs *Numatic* and *John Rugge.* The form in which the conditions contained in each of the policies are phrased is identical, and states, in so far as effective, that the policy is to cover only the legal liability of the tugs for loss or damage and charges as provided in the policy.    The legal liability of the tugs thus insured is required to have been incurred or caused by injury to any other vessels or crafts, their freights then being earned on cargoes on board of such vessels at the time of the disaster.    The injury to vessels or cargoes must be such as would happen by stranding or collision while the vessels shall be in tow of the tug, either alongside or at the end of a hawser.    The legal liability also is insured against when it has been incurred or caused by the collision of the tug with any other crafts not in tow of the tug at the time.    There is also a provision for indemnification by the insurer when the liability has been incurred or caused by the collision of any vessel or craft in tow of the said tug with any

First Department, March, 1926. [Vol. 216

other vessel or craft not in tow of the tug at the time; and further, it is provided that the tug, when such damages are caused, is to be legally liable in either case mentioned to pay any sum in consequence of the damage caused by such collision to such vessels or crafts or their freights or cargoes. The assured warrants: " That the said tug shall at all times be commanded by and in charge of a duly licensed Captain or pilot, and that she shall not take in tow a larger number of vessels or crafts than she can at all times safely handle and fully protect, and that in all cases where two or more vessels or crafts are towed together in the same tow they shall be so fastened, moored or lashed to each other with proper fenders and other appliances as to prevent their injuring one another by chafing, bumping, pounding or riding."

On December 5, 1918, while these policies were in force, the steam tug *John Rugge*, with the *Numatic* as a helper, was towing a flotilla of sixteen or seventeen barges from Port Johnson in Staten Island sound through New York bay to a pier in the East river. The tow was made up in tiers of three boats abreast. Some of the boats were loaded, others were light. A boat called the *Brooklyn Union Coal Co., No. 6*, the starboard hawser boat, was loaded. She was in the first tier. The boat to her left or port side, called the *Phelan*, was higher out of water than the *No. 6*. *No. 6* was carrying coal, and was of the type known as a coal barge. When they were coming across the bay under tow, the wind was blowing at nearly thirty miles an hour, and by reason of the roughness of the weather it is alleged by plaintiff that the *No. 6* was damaged by pounding, causing her to leak. When the tow reached the East river and was off Pier 5, which is near the Battery, the captain of the barge *No. 6* hailed the captain of the tug *Numatic* and told him that the *No. 6* was leaking. The tug captain had then cut out one barge from the tow, which was to be landed at an intermediate point, but went aboard the *No. 6*, looked into her hold and sounded her, and seeing that there was no immediate danger, he then proceeded with the barge which was cut out to her destination. The *Rugge* proceeded alone up the East river with the tow, and the *Numatic* overtook them at about Eighteenth street. The *No. 6* had then taken in a considerable quantity of water, and the *Numatic* put out a line on her and attempted to get her to the dock, but she sank off Eighteenth street in the East river, and caused damage to herself and cargo.

The Tice Towing Line was sued for these damages and limited its liability under the Federal Limitation of Liability Act (U. S. R. S. § 4283 *et seq.;* U. S. Admiralty Rules [———], rule 54 *et seq.;* U. S. Admiralty Rules [1921], rule 51 *et seq.;* U. S. D. C. S. D. N. Y.

Admiralty Rules [———], rule 54 *et seq.;* U. S. D. C. S. D. N. Y. Admiralty Rules [1921], rule 31 *et seq.;* now U. S. D. C. S. D. N. Y. Admiralty Rules [1924], rule 31 *et seq.*), and under the claims filed in the limitation proceedings a judgment was rendered in the United States District Court for the Southern District of New York by which the plaintiff here (defendant there) was held liable for the damages.

The parties have stipulated in this action to be bound by the law rulings in the limitation proceedings and by the facts found by the learned court there. Every fact there found is assumed by this stipulation to be a fact here.

When the disaster occurred the plaintiff had four other insurance policies on each of the tugs, aggregating, with these two, $32,000. The defendant insurance company's policies covered the sum of $10,000, which would make defendant's proportion of liability ten thirty-seconds of any amount found due the plaintiff under all the policies of insurance.

The Tice Towing Line, the plaintiff here, satisfied the judgment found in the limitation proceedings, and brought this action with other actions against the other insurance companies to recover the amount which it was compelled to pay. The amount paid in the limitation proceedings for damages was $12,822.77, besides legal expenses of $3,068.28, making a total of $15,891.05. If the defendant is liable under these policies, it is stipulated that these sums are the basis of the defendant's proportionate liability for damages as an insurer.

Many of the questions that were formerly contentious are not now urged. There was considerable argument at the trial as to whether or not pounding was collision within the meaning of the terms of the policies. There is an express insurance against legal liability of these tugs when the liability is caused through injury to two vessels and their cargoes, both of which are in tow of the tug, through a collision. Where a collision occurs between two vessels in the tow, such collision, from the very nature of their inactive character by reason of having no motor power, means one resulting from a bumping or pounding together. This type of collision must necessarily be the nature of the collision referred to in the policy, since one of the warranties required of and assumed by the insured is that it is to properly fasten, moor or lash vessels with proper fenders or other appliances, when two are towed together, so as to prevent their injuring one another by chafing, bumping, pounding or riding. This requirement indicates that it was within the contemplation of the insrance company that pounding was to be included within the term " collision," else this warranty in

the policy and the inclusion of an indemnity for liability against collision between boats in the same tow were meaningless. Collision also includes in its definition the "impinging of vessels together while being navigated." (11 C. J. 1011.) Any violent contact of a vessel with another vessel in whatever manner produced is a collision, except such contact as is brought about by design. If the policy, however, admits of two constructions, there is no doubt that under the rule of *contra proferentem* that construction should be adopted which will indemnify the insured.

It has been held in admiralty that a vessel lying at her mooring, which is violently rubbed or pressed against by another vessel lying alongside her, in consequence of a collision occurring between the second vessel adjoining and a third vessel under way, has been collided with by the second vessel. (*The Moxey*, 1 Abb. Adm. 73; Fed. Cases, 9894.) It seems, therefore, that the indemnity for liability in the policies included this form of collision known as pounding. The learned trial court, however, held that there was no proof that the collision or pounding was the proximate cause of the opening of the seams of the barge *No. 6*, and thus concluded that the complaint must be dismissed.

We think this was an erroneous view of the evidence and of the effect of the stipulations of counsel on the trial here and the findings in the United States District Court. Among the facts found, which by stipulation are binding on defendant, were: "At some time before reaching Pier Five, East River, she [No. 6] sprung a leak; this was caused by the pounding of the barge or by the wrenches of the sea on the trip up; it grew gradually worse as she proceeded. On reaching Pier Five, she had made twenty-seven inches of water astern and showed a leak on her starboard stern quarter. It is impossible to say whether there were other leaks."

The answer of the defendant in this action contains the following allegation: "* * * they were not lashed to each other with proper fenders or other appliances to prevent their injuring one another by chafing, pounding, bumping or riding; and that by reason of this breach of warranty the seams of coal barge 'No. 6' were opened, so that she filled and eventually was negligently suffered to sink * * *."

That the "pounding" caused the seams of the *No. 6* to open up and thus effected a leak and caused the sinking, is shown by the following: The defendant expressly admitted this fact at the opening of the trial, and such admission is contained in the record. There is no testimony that points to any other conclusion. The United States District Court so found, and the findings are binding by stipulation in this case.

As to the admission at the trial in the limitation proceedings, the following colloquy occurred: " The Court: As I understand it, it is not disputed that there was a pounding. Mr. Purdy: No. In fact the answer alleges that she pounded, as the result of which she leaked. Mr. Putnam: Yes. That is correct."

The admission in the answer was made in connection with the defense, which was attempted to be established, that this pounding caused the damage because of failure of the plaintiff to properly protect the barge with fenders and with proper appliances to prevent pounding. Although this admission in the answer would not be sufficient of itself to establish liability, it indicates what the intent of the admission at the opening of the trial was, and that it was not inadvertent. It is obvious from the nature of the defense that the intent was to contend that the pounding was not a collision within the terms of the policy; that plaintiff breached the warranty of the policy in failure to properly lash the boats together and protect them by fenders, and that the vessel was negligently suffered to sink because of improper handling by the crew. It would seem from the manner of trying this case that everything not contested seriously was stipulated, and that the issue was confined to matters bearing upon the three defenses referred to.

It seems to me that the colloquy of counsel in court, quoted above, constituted an express stipulation in open court as to a material fact, to wit, that the answer admitted that the vessel pounded and leaked as a result thereof, and that such statement in the answer was " correct " (so phrased) or true in fact. Besides, the testimony shows that the leaking was caused by pounding. The captain of the damaged barge testified that the boats were leaking; that they were " rocking and banging and banging; " that *No. 6* started to list and was pounding against the boat on her port side, splintering up the *No. 6* boat and opening up her seams. He also testified that she did not leak before that. He said, too, that when the boats came together they struck each other " very hard," and they feared that the boat would open up the seams of the boat on the port. *No. 6* was also occupying a sheltered place in the tow, and it would seem that a mere rocking in the seaway could not cause her to leak, especially when all the boats of the same class not so sheltered from the waves escaped injury.

A witness, Welsh, testified that he had been in the business for twenty years and had had opportunity to observe the action of such boats in a tow. He said that boats " will open one another up [meaning open one another's seams] when they pound together; " and that, although the *No. 6* would be sheltered by being on the

lee side of a boat higher in the water than she, she would be, by reason of that position, in a more dangerous place as far as pounding was concerned; that the lighter and heavier boats will not " jump good together, they are going to jump in opposite directions, which would cause a pounding."

Captain Heater also observed in his experience that pounding of this character would cause boats to leak.

There was no testimony whatever on the part of the defendant to support a conclusion that the jumping or rocking of the boats in the seaway would open up the seams, unless it was accompanied by a pounding against the boats abreast. The fact that those barges more exposed to the waves were not damaged, while the boat on the lee side which was pounded was so caused to leak, raises an inference sufficient to make a fact finding that it was the banging and pounding and not the swaying in the seaway which caused the damage. Besides, the United States District Court found as a fact that the barges were not secured against pounding and were not built to strike together in a seaway, and that it would not take much pounding to start their seams. This is subject to the deduction that the finding there (binding here) was that the pounding caused the leaking. In fact, the finding in the District Court is that she took in little water over her bows, that she sprung a leak, " caused by the pounding of the barge or by the wrenches of the sea on the trip up."

The learned trial court also concluded that there was no leak on the port side on which the pounding occurred; that the only leak was on the starboard stern corner; and that the seam on the starboard side may have been opened directly by the straining caused by wind and water. Directly contrary to this was the finding of the District Court of the United States whose findings were to have been accepted as binding. There the learned judge held that there was nothing to show whether or not there were other leaks, and that the examination of the captain was insufficient to make a conclusion that the captain had found the only leak.

We conclude that there was evidence from admission, proof and findings that the pounding caused the leak which brought about the loss, and that the judgment was rendered on an erroneous conclusion with respect to the proof as to the cause of the leaking by pounding, and, therefore, it should be reversed and a new trial ordered, since it will be necessary for a trial court to pass upon the defenses raised in the answer as to which no findings were made in view of the direction of a verdict for supposed failure to prove the cause of plaintiff.

The judgment and order should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., DOWLING, MERRELL and FINCH, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellant to abide the event.